UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID DELGADO,

                              Petitioner,

                -against-

SUPERINTENDENT GRIFFIN, Green Haven
Correctional Facility,

                              Respondent.

16cv1313 (ER) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE EDGARDO RAMOS, U.S.D.J.:**

        Proceeding *pro se*, petitioner David Delgado ("Petitioner") seeks a writ of habeas corpus

pursuant to 28 U.S.C. § 2254, following his conviction by a jury of manslaughter in the first

degree, in violation of Section 125.20 of the New York Penal Law.  His sentence was modified

on appeal, and Petitioner is now serving a prison term of 20 years, with five years of post-release

supervision, for this conviction.  Although, at the time he filed his habeas petition, Petitioner was

apparently incarcerated at the Green Haven Correctional Facility, in Stormville, New York,[1]

public records indicate that he is currently incarcerated at Eastern NY Correctional Facility, in

Napanoch, New York.[2]

        In his Petition, Petitioner claims that he received ineffective assistance of trial counsel

and was also denied the assistance of a medical expert, claims that he raised in the state courts

pursuant to a motion to vacate his conviction pursuant to Section 440.10 of the New York

_____

        [1] *See* undated Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in
State Custody ("Petition" or "Pet.") (Dkt. 2), at ECF 16 (referencing the page number affixed to
the document by the Court's Electronic Case Filing ("ECF") system).

        [2] *See* http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ000 (last visited
June 3, 2020).

Criminal Procedure Law.  (*See generally* Pet.)  In opposition, Respondent argues that Petitioner's claims are procedurally barred and, in any event, without merit.  (*See generally* Memorandum of Law, dated June 2016 ("Resp. Mem.") (Dkt. 11).)  For the reasons discussed below, I recommend that the Petition be dismissed.

## BACKGROUND

### A.     Factual Background

Based on the evidence presented at trial, Petitioner stabbed and killed a man named George Talavera ("Sosa") during a party held on Christmas Eve of 2009, in the Bronx apartment of Carmen Diaz ("Diaz").  (*See* Trial Tr. (Dkt. 16), at 678.)[3]  Several witnesses at the party, as well as a responding police officer, a detective, and a medical examiner testified at trial, and Petitioner also took the stand to testify in his own defense.  (*See generally id.*)

One of the guests at the party, Melissa Dempsey ("Dempsey"), testified that Petitioner arrived at Diaz's apartment with his then-girlfriend Carmen Matos ("Margie"), and was introduced to several guests, including Sosa, who was drinking, dancing, and behaving a "little loud[ly]" at the party.  (*Id.*, at 870.)  Dempsey recalled that, at one point during the night,

---

[3] Respondent filed portions of the state court record at Dkt. 10-1 through Dkt. 10-10, as attachments to a counsel declaration filed in opposition to the Petition.  In citing to particular pages of those docket entries, this Court will cite herein to the page numbers affixed to the documents by the Court's ECF system.  Respondent, however, did not file the transcripts of the state court proceedings, despite providing copies to this Court, upon request, in both electronic and hard-copy format.  This Court has directed the Clerk of Court to file these transcripts, and they now appear on the Docket, in two pdf files.  (Dkts. 16 & 17.)  The transcript of Petitioner's trial, which was conducted from June 25, 2012 through July 9, 2012 ("Trial Tr."), starts at Dkt. 16.  The transcript of Petitioner's sentencing, which was held on August 1, 2012 ("Sentencing Tr."), is included in Dkt. 17.  Each transcript has consecutive page numbering, and, when referencing these transcripts herein, this Court will cite first to the Docket entry where the relevant pages can be found, and then to the pages on the transcripts themselves, rather than to the ECF page numbering.

Petitioner and Margie left the party to go to Margie's apartment, which was in the same building, to get cranberry juice, and that they were gone for approximately 20 minutes.  (*See id.*, at 867.) According to Dempsey, after Petitioner and Margie returned to the party, Sosa and Petitioner began to argue in the living room.  (*See id.*, at 878.)  Dempsey testified that, although she did not see Sosa physically threaten Petitioner, Petitioner nevertheless started to fight with Sosa, hitting Sosa several times in the neck and the head, and Sosa then began to bleed heavily from the neck. (*See id.*, at 878-80; *see also id.*, at 882 (Dempsey testifying that she did not see "Sosa do anything to [Petitioner] before [Petitioner] started attacking him.").)  Dempsey recalled seeing Petitioner hold a "weapon in his hand" during the fight – specifically, a knife with a beige handle.  (*See id.*, at 905-06.)  Dempsey also testified that, after Petitioner swung several times at Sosa, and Sosa started to bleed, Petitioner ran out of the apartment.  (*See id.*, at 888.)

Dempsey's husband, Alberto Vasquez ("Vasquez"), who also testified at trial, similarly testified to seeing Petitioner hold a "blade" between his fingers in his fist, and to seeing him use that blade during the fight with Sosa.  (*See id.*, at 1024.)  Like Dempsey, Vasquez stated that he had not observed, up until the point of the stabbing, "anything transpire at all physically between Sosa and [Petitioner]."  (*Id.*, at 1006.)

Both Dempsey and Vasquez testified that they did not see Petitioner drinking during the party, nor, according to these witnesses, did Petitioner appear to be under the influence of drugs. (*See id.*, at 1005.)  A third guest at the party, Maria Mercedes Rodriguez, who also testified at trial, recalled that, during the party (and before the stabbing), she heard Sosa say to Petitioner, "I know Margie for a long time, do the right thing by her because I [have known] her son for many years and if you don't do the right thing by her, then you got to answer to me."  (*Id.*, at 1117, 1215.)

Margie – Petitioner's former girlfriend – also testified, and, in contrast to Dempsey's and Vasquez's accounts, she stated that she recalled seeing Petitioner drink several types of alcohol at the party, including liquor and beer.  (*See id.*, at 1326-37.)  Margie explained that Petitioner had been depressed during the holidays that year (*see id.*, at 1303-04, 1386-87), and she testified that she saw him ingest "a pill" prior to the party (*id.*, at 1387).  Margie further testified that, during the party, Sosa had "approached [Petitioner] face-to-face, chest to chest," and had threatened him.  (*Id.*, at 1397.)  Margie recalled that she and Petitioner then left the party to go to her apartment to pick up cranberry juice.  (*See id.*, at 1418.)  Although, as summarized below, Petitioner admitted that he had taken a knife from her kitchen and brought it with him when they returned to the party, Margie testified that she did not see Petitioner grab anything from her kitchen during the time they were there.  (*See id.*, at 1320-22.)

In testifying on his own behalf, Petitioner first provided some background and context for his claimed psychological state at the time of the events in question.  He stated that he had been sexually assaulted by his step-father when he was a child (*see id.* (Dkt. 17), at 1630); had attempted to commit suicide when he was 14, 25, and 32 years old (*see id.*, at 1632-33); had been "confined to a mental institution as a result of [his] mental condition" at least "three times" (*id.*, at 1644); and, at the time of the party, had been depressed, had been having trouble sleeping, and was taking medication for his depression and mood stabilizers (apparently for bipolar disorder) (*see id.*, at 1638).  According to Petitioner, he was under the influence of both psychiatric medication and alcohol while at the party.  (*See id.*, at 1641, 1649-50.)  As to the medication, he specified, on cross-examination, that, at the time of the party, he was taking the

medications Abilify and Depakote,[4] which had been prescribed to him by a psychiatrist.  (*See id.*, at 1691-92.)  As to the alcohol, he testified on direct that he recalled having had at least six cups of hard liquor and several cans of beer, and he also testified that he had felt "kind of dizzy."  (*Id.*, at 1641.)

With regard to the particular events of the night in question, Petitioner testified that, during the party, Sosa had asked him if "Margie was [his] girlfriend," and Petitioner told him she was.  (*Id.*, at 1651.)  In response, according to Petitioner, Sosa stated that, if Petitioner "disrespect[ed] her, . . . [Petitioner] was going to have problems with [Sosa] and his people[]." (*Id.*)  Petitioner recounted Sosa's telling him that Margie "was not alone and [that] she had back up from everybody at the party and that [Sosa] was going to beat [Petitioner] up."  (*Id.*)  As to the knife, Petitioner testified that, at some point after this confrontation, he left the party with Margie to go to her apartment to get the cranberry juice, but he felt "fearful" and concerned about Sosa, and, for this reason, while he was in Margie's kitchen, he "put a [steak] knife in [his] pocket."  (*Id.*, at 1656).  Petitioner then admitted to stabbing Sosa after returning to the party, although he testified that he was not sure where the "stab wounds" had landed.  (*Id.*, at 1762.) During cross-examination, Petitioner added that Sosa had called him a "fat boy" during the party and had "swung twice" at Petitioner's face during their physical fight and right before Petitioner took out the knife, although Petitioner conceded that he had never provided those details to the

---

[4] Abilify (a brand name of the drug aripiprazole) "is used alone or together with other medicines to treat mental conditions such as bipolar 1 disorder (manic-depressive illness), major depressive disorder, and schizophrenia."  *See* www.mayoclinic.org/drugs-supplements/aripiprazole-oral-route/description/drg-20066890 (last visited June 3, 2020). Depakote (a brand name of the drug valproic acid) is "used to treat the manic phase of bipolar disorder (manic-depressive illness)."  *See* www.mayoclinic.org/drugs-supplements/valproic-acid-oral-route/description/drg-20072931 (last visited June 3, 2020).

police or the District Attorney's Office.  (*Id.*, at 1786-87, 1792.)  At trial, Petitioner denied that

he had intended to cause serious physical injury to Sosa or to kill him.  (*See id.*, at 1796.)

With respect to what happened after the stabbing, Petitioner testified that he ran out of the

party and hailed a cab that took him back to his Brooklyn apartment.  (*See id.*, at 1687.)  The

police arrived at his apartment the next day, arrested him, and, when he arrived at the precinct,

he waived his *Miranda* rights and made a voluntary statement.  (*See id.*, at 1679.)

Detective Kenneth Banker, who gave Petitioner paper to transcribe his statement, read it into

the trial record; in relevant part, the statement was as follows:

> I walked to the apartment and I was introduced to people and that –
> and that [was] when Sosa started saying that if I disrespect[ed]
> Margie – . . . that I was going to have problems with him and
> everybody and I said okay, I get it.  And I started to drink,
> associated with people at the party and he came at me again saying
> the thing [he told] me that I – that I was going to have problems
> with [him] and I got nervous and . . . he was disrespect[ing]
> everybody at the party and – and he came back at me again and I
> got fear[ful towards] him 'cause he's bigger than me.  I was scared
> at the point that he was going to attack me so I took a knife from
> the kitchen because I was already scared at him.  So when I was
> about to leave the party, he came at me again and told me to
> remember that if I fuck around with Margie that I was going to get
> hurt by him.  So when I went to walk away Sosa grab[bed] me and
> that's when I took the knife out of my pocket . . . Out of my pocket
> and hit him . . . I was already scared and nervous for my safety.  I
> [am] not the person to do [things] like this.  It wasn't planned.  I'm
> sorry for what went down that night.  I was scared for my life.
> And after I [left] the party, I ran out of the apartment [and] took a
> cab and I – and I don't remember where is the knife.

(*Id.*, at 1472-73.)  After reading the statement into the record, Detective Banker noted that the

responding officers never recovered the knife.  (*See id.*, at 1529-30.)

B.    **Procedural History**

1.    **Trial and Sentencing**

Petitioner was tried by jury in the New York Supreme Court, Bronx County, from June 25, 2012 to July 9, 2012, with the Honorable Dominic R. Massaro, J.S.C., presiding.  He was charged with three crimes:  murder in the second degree (N.Y. C.P.L. § 125.25(1)), manslaughter in the first degree (*id.* § 125.20(1)), and criminal possession of a weapon in the fourth degree (*id.* § 265.01).

As relevant here, during both his opening statement and in summation, Petitioner's trial counsel, Robert Cantor, Esq. ("Cantor"), drew specific attention to Petitioner's mental health status and emotional state, including his diagnoses of "bipolarity" and "depression" (Trial Tr. (Dkt. 16), at 688); Petitioner's prior attempts to commit suicide, his history of sexual abuse, and his prior hospitalizations (*see id.*, at 687, 689); and Petitioner's self-reported consumption of alcohol and prescribed medication, including anti-depressants and mood stabilizers, during the night in question (*see id.*, at 688; *see also id.* (Dkt. 17), at 1860).  In addition, throughout his questioning of the witnesses, and in both his opening and closing statements, Cantor referred to and developed the defense's theory of justification:  that Sosa had harassed Petitioner and threatened him during the party, that Petitioner "thought . . . he was once again about to be physically abused," and that Petitioner "thought [he] was [in] a life threatening situation," leading him to punch Sosa with the knife in between his fingers.  (*Id.* (Dkt. 16), at 691-93.)

In addition, throughout the trial, Cantor asked for frequent side-bar conferences, and, during one of those conferences near the close of the evidence, Cantor made an oral application for the court to dismiss the entire case, as a matter of law, arguing that (1) the People had not proven beyond a reasonable doubt that Petitioner possessed the state of mind necessary to have

the "intent to cause the death [of Sosa] or [the] intent to cause serious physical injury," as required for the charge of second-degree murder (*id.*, at 1055); (2) the People had not proven beyond a reasonable doubt the "*mens rea* element, intent to cause serious physical injury" for the charge of first-degree manslaughter (*id.* (Dkt. 17), at 1625); and (3) "the People ha[d] not established that [Petitioner] was in possession of a knife with intent to use it unlawfully against another," and, thus, the proof did "not rise to the level of guilt beyond a reasonable doubt" on the charge for criminal possession of a weapon in the fourth degree (*id.*, at 1626). The trial court denied the application in its entirety, ruling that all three charges would be placed before the jury. (*See id.*)

Later, during the charge conference, Cantor again made several applications. Cantor specifically argued that there was "an ample evidentiary predicate" for the trial court to charge "manslaughter in the second degree" as a lesser included offence of the first-degree manslaughter charge (*id.*, at 1806); that the court should also charge the lesser included offense of "criminal negligent homicide" (*id.*, at 1808, 1824); that, if the court declined to charge those lesser offenses, then it should issue the defense of "extreme emotional disturbance" ("EED") (*id.*, at 1824); and that the court should issue an "intoxication" charge (*id.*, at 1811). On the proposed intoxication charge, Cantor asked that the jury be allowed to consider

> whether or not [Petitioner] was so intoxicated that he [was] incapable of formulating the intent to kill, formulating the intent to inflict serious physical injury, whether or not he was so drunk enough that [it] would lend to a finding of recklessness, which would be a constituent element of manslaughter in the second degree, and whether intoxication was such that [it] would cause [Petitioner] to act in a criminally negligent fashion.

(*Id.*, at 1811.) In addition, Cantor asked the court for the following:

> And when you charge intoxication[,] I am asking you not only to incorporate alcohol, but medicine, psychotropic medicine. . . .

8

> [T]here is testimony in this case unimpeded that [Petitioner] took
> medicine prior to going to the party to counter depression and
> bipolarity and medicine combined with an abundance of alcohol is
> a jury question to determine what effect that had upon
> [Petitioner's] *mens rea*.

(*Id.*, at 1814.)  Lastly, Cantor requested that the court charge the jury with the justification

defense.  (*See id.*)  The trial court declined each of Cantor's proposed charges, with the exception

of the justification defense.  (*See id.*, at 1821.)

On July 9, 2012, the jury found Petitioner guilty of manslaughter in the first degree.  *See*

N.Y. C.P.L. § 125.20(1).  On August 1, 2012, Justice Massaro sentenced Petitioner to a prison

term of 25 years, with five years of supervised release.  (*See* Sentencing Tr. (Dkt. 17), at 1-19.)

## 2.  **Direct Appeal**

Following his conviction, Petitioner pursued a direct appeal to the Appellate Division,

First Department, filing a counseled brief in support of his appeal on October 11, 2013.

(Dkt. 10-1.)  In his brief, Petitioner raised three claims:  (1) that the trial court had erred by

failing to submit second-degree manslaughter to the jury, as a lesser included offense of

first-degree manslaughter; (2) that the trial court had erred by failing to give the jury a charge on

intoxication;[5] and (3) that his prison sentence was excessive.  (*See generally id.*)  Respondent

filed a brief in opposition.  (Dkt. 10-2.)

On April 15, 2014, the Appellate Division affirmed Petitioner's conviction, but reduced

his sentence to 20 years in the interest of justice.  *People v. Delgado*, 116 A.D.3d 541 (1st Dep't

2014) (copy in the record at Dkt. 10-3.)  As to Petitioner's first two claims, the Appellate

Division reasoned that, given that Petitioner "admitted he acquired a knife in preparation for

---

[5] Although, at trial, Cantor sought an intoxication charge that would have incorporated both alcohol and psychiatric medication (*see* Trial Tr. (Dkt. 17), at 1811-14), on direct appeal, Petitioner only argued that the charge was warranted based on the extent of Petitioner's alleged consumption of alcohol (*see* Dkt. 10-1, at ECF 38-43).

possible confrontation with [Sosa]" and that Petitioner's "behavior was entirely purposeful," there was no reasonable view of the evidence – even viewed most favorably to Petitioner – that would have supported the conclusion that he "acted with anything less than intent to cause serious injury," or that "he was so intoxicated as to be unable to form the requisite intent." *Id*. at 541-42.

By letter dated May 19, 2014, Petitioner sought leave to appeal to the New York Court of Appeals as to each of the claims that he had raised to the Appellate Division. (Dkt. 10-4, at ECF 1-3.) The People opposed the application (*see id.*, at ECF 4-5), and the Court of Appeals denied Petitioner's motion for leave to appeal by Order dated August 12, 2014, *see People v. Delgado*, 23 N.Y.3d 1061 (2014) (copy in the record at Dkt. 10-4, at ECF 6).

### 3.     Petitioner's Section 440.10 Motion

By motion dated January 8, 2015 (Dkt. 10-5), Petitioner, proceeding *pro se*, then sought an order from the trial court vacating his conviction pursuant to Section 440.10 of the New York Criminal Procedure Law, on the following two stated grounds:

> (A)    That [Petitioner] was denied effective assistance of trial counsel due to the fact[] that [Cantor] knew that [Petitioner] had taken mental health medication together with alcoholic beverages, and therefore should ha[ve] requested that the trial court allow an expert witness to provide evidence of medication reaction to the mental state of mind of [Petitioner] during [the] commission of the crime, [and]
>
> (B)    That [Petitioner] was also denied needed expert assistance at trial in violation of the [14th] Amendment.

(Dkt. 10-5, at ECF 1-2.) Petitioner also sought a hearing on his motion. (*See id.*, at ECF 2.)

### a.       __The Parties' Arguments__

In addition to the stated grounds for his motion to vacate, Petitioner raised certain other

contentions (or sub-points) in the papers he submitted in support of his Section 440.10 motion.

Those papers included an affidavit, in which Petitioner cited both the Sixth and

14th Amendments (as well as the New York State Constitution), in connection with his

ineffective-assistance-of-counsel claim.   (*See id.*, at ECF 3.)   In that same affidavit, under the

heading "Evidence Submitted Herewith, Which is Not Part of, Nor Discernable From the Record

on Direct Appeal," Petitioner contended that Cantor had failed to investigate the fact that

Petitioner had consumed both psychiatric medications and alcohol "before and during the

commission of the crime[s] ch[a]rged" (*id.*, at ECF 5 (alteration in original)), and had also failed

to request that the court solicit an expert witness to testify as to whether this consumption would

have caused "any mental reaction" (*id.*; *see also id.*, at ECF 6 ("It was trial counsel's duty[] to

inform the court that [Petitioner] would be requesting to solicit the testimony of an expert

witness [] regarding the fact that [Petitioner] had taken medication mixed with alcohol").

Petitioner also seemed to contend that the fact that he had testified at trial to ingesting both

medication and alcohol "before he committed the crime" specifically gave rise to the need for

expert testimony as to the effect of that combination (*id.*) – especially since, when asked on

cross-examination about the effects of his medication, Petitioner "could not answer the

prosecutor's questions adequately due to the fact that he was no expert in the field of medicine or

[regarding] his own medications" (*id.*, at ECF 7; *see also id.* (stating that Petitioner "should have

been provided with the testimony of an expert witness")).

Petitioner also filed a memorandum of law in support of his Section 440.10 motion, in

which he argued that

> [he] had told [Cantor] before trial[] that he had consumed
> medication and alcohol[ic] bever[a]ges before the incident
> happened with [Sosa], and with this information, it was [Cantor's]
> duty[] to bring this fact to the attention of the trial court, and file
> motions on [Petitioner's] behalf requesting that the [c]ourt provide
> funds for an expert witness in the field of medicine, and to call said
> witness to trial as an expert witness to testify on behalf of
> [Petitioner], and, most importantly, to protect [Petitioner's] rights
> to a fair trial, by having the jury hear the complete facts of the
> matter, and so that the prosecutor could not ha[ve] taken advantage
> of [Petitioner] when he took the stand to testify to those facts.

(*Id.*, at ECF 8-9.)  He also argued that Cantor had "failed to obtain medical records" regarding

the fact that Petitioner had been prescribed psychiatric medication (*id.*, at ECF 9), and suggested

that, had Cantor conducted "an adequate investigation for a possible defense of [EED]", the

result could have been a reduction in the charge against him (from murder to second-degree

manslaughter), or as "a possible mental defense" (*id.*).  Lastly, Petitioner asserted that Cantor

"had no legitimate reason for declining to call an expert witness," as Petitioner's allegations that

he had consumed medication together with alcohol were not based on speculation.  (*Id.*, at

ECF 10.)

　　　In an opposition memorandum dated March 31, 2015 (Dkt. 10-6), the People made

certain procedural arguments as to why Petitioner's motion to vacate the conviction should be

denied.  First, the People argued that Petitioner had not met his "burden of coming forward with

sufficient allegations to create an issue of fact" capable of overcoming the presumption of

validity that attached to the judgment of his conviction.  (*Id.*, at ECF 5 (internal quotation marks

and citation omitted).)  Specifically, the People pointed out that Petitioner's factual allegations

regarding what expert medical testimony would have revealed – and that such testimony would

have been available – were made solely by him and were unsupported by any other affidavit or

evidence.  (*See id.*, at ECF 5-6.)  For this reason, the People sought the denial of Petitioner's

motion pursuant to Section 440.30(4) of the New York Criminal Procedure Law, which allows a

trial court to deny a motion to vacate without conducting a hearing, where

> [t]he motion is based upon the existence or occurrence of facts and
> the moving papers do not contain sworn allegations substantiating
> or tending to substantiate all the essential facts,

N.Y. C.P.L. § 440.30(4)(b), or where

> [a]n allegation of fact essential to support the motion . . . is made
> solely by the defendant and is unsupported by any affidavit or
> evidence, and [] under these and all the other circumstances
> attending the case, there is no reasonable possibility that such
> allegation is true,

 N.Y. C.P.L. § 440.30(4)(d).  (*See* Dkt. 10-6, at ECF 5-6.)

Second, focusing on Petitioner's ineffective-assistance-of-counsel claim, the People

argued that, under Section 440.10(2) of the New York Criminal Procedure Law, it was required

that the trial court deny Petitioner's Section 440.10 motion because Petitioner could have raised

the claim on his direct appeal, but failed to do so.  (*See id.*, at ECF 6.)  In relevant part,

Section 440.10(2) provides that a motion to vacate must be denied where

> sufficient facts appear on the record of the proceedings underlying
> the judgment to have permitted, upon appeal from such judgment,
> adequate review of the ground or issue raised upon the motion,
> [but] no such appellate review of determination occurred owing to
> the defendant's . . . unjustifiable failure to raise such ground or
> issue upon an appeal [] perfected by him.

N.Y. C.P.L. § 440.10(2)(c).  In relying on this Section, the People acknowledged that "strategic

decisions are generally not reviewable on direct appeal" (Dkt. 10-6, at ECF 6), but contended

that the "the effect of an attorney's decision not to call a particular witness is evident on the face

of the record" (*id.* (citations omitted)).

The People went on to argue that, irrespective of the procedural grounds, Petitioner's

ineffective-assistance claim (including its sub-arguments) was meritless based on the standards

governing that claim under both state and federal law.  (*See id.*, at ECF 7-11.)  In opposing the motion on the merits, the People highlighted the fact that, in his motion, Petitioner did not identify his alleged mental health diagnosis and symptoms, or his purported medications and their side effects (*see id.*, at ECF 8); that he had "failed to demonstrate that his symptoms [were] generally recognized as side effects of [his] medications" or that an expert would have supported that contention (*id.*, at ECF 9); or that Cantor had "lacked a strategic explanation" for opting not to call an expert to testify (*id.*).

Additionally, to the extent Petitioner asserted that Cantor's failure to call an expert deprived him of the opportunity to present an EED defense, the People noted that, under state law, such a defense could only have constituted a mitigating circumstance to reduce a charge of *murder* to the lesser charge of *first-degree manslaughter*.  (*Id.*, at ECF 10 (statutory citation omitted).)  As Petitioner was actually convicted of first-degree manslaughter, the People explained that an EED defense would have been irrelevant here, and that Petitioner's deprivation of the defense was therefore not prejudicial.  (*Id.*)  In any event, the People argued that expert psychiatric testimony would not have been necessary, under the law, to establish EED, and, further, that, based on Petitioner's testimony that he had armed himself with a knife and used it in self-defense, the EED defense would have been unavailable to him, as opposed to the "justification" defense that was presented to the jury.  (*See id.*)

Finally, the People argued that Petitioner's claim that Cantor should have conducted a further investigation of Petitioner's mental condition or medications, and that such an investigation could have led to a "possible mental defense," was "equally meritless."  (*Id.*, at ECF 11.)  According to the People, Petitioner would not have been able to demonstrate that, under Section 40.15 of the New York Penal Law, he lacked criminal responsibility for his

14

conduct "by reason of mental disease or defect," in light of his testimony that he stabbed Sosa in self-defense.  (*Id.*)  This testimony, the People argued, "demonstrate[d] a presence of mind that would have belied a Penal Law § 40.15 defense."  (*Id.*)

In a reply dated April 13, 2015, Petitioner primarily argued that he was entitled to a hearing on his motion, arguing that a hearing was necessary to secure testimony from Cantor, who, according to Petitioner, had refused to communicate or cooperate with him in connection with the motion.  (Dkt. 10-7, at ECF 2.)  Petitioner also contended that counsel for the People were not themselves mental health professionals, and, thus, were not in a position to assert that he should be denied a hearing as to matters requiring psychiatric expertise.  (*See id.*, at ECF 3-4.)  As to the substance of his arguments, Petitioner reiterated that Cantor, as his trial counsel, had been ineffective for failing to investigate the fact that Petitioner "had taken medication together with [l]iquor, before the stabbing had taken place" (*id.*, at ECF 1; *see also id.* at ECF 4 (again alleging Cantor's failure to investigate)), and for failing to request from the trial court that Petitioner "be afforded the opportunity to seek and find an '[e]xpert witness' to give testimony as to how a mental patient wou[l]d react, when taking his medications and mixing them with alcohol (*id.*, at ECF 4).  In his reply, Petitioner also – for the first time in connection with his Section 440.10 motion – referenced the fact that the court did not give the jury an intoxication charge, seemingly suggesting this was attributable to Cantor's deficient performance.  (*See id.,* at ECF 3.)

### b.    The Trial Court's Decision

By decision dated July 6, 2015, the trial court (Massaro, J.S.C.) denied Petitioner's Section 440.10 motion without a hearing.  *People v. Delgado*, 48 Misc.3d 1207(A), 18 N.Y.S.3d 580 (Sup. Ct. N.Y. Cty. July 6, 2015) (copy in the record at Dkt. 10-8).  First, the court accepted

15

the People's arguments that the motion was improperly supported under Sections 440.30(4)(b)

and (d), and expressly denied it on those grounds, as follows:

> Besides his only general statements, [Petitioner's] motion is
> lacking any documentation or specifics concerning his mental
> condition, the details of any treatment or the medication he was
> taking at the time of the incident that would warrant calling an
> expert witness.  Nor, does he demonstrate that such testimony was
> available to support his defense.  [Petitioner] offers little more than
> speculation that an expert's testimony would have assisted the jury.
> Thus, [Petitioner's] motion to vacate his judgment is denied
> pursuant to CPL 440.30[4][b] because the motion is based on the
> existence of facts[,] and the moving papers do not contain sworn
> allegations substantiating or tending to substantiate all the essential
> facts; and pursuant to CPL 440.30[4][d] because the allegations are
> made solely by [Petitioner] and unsupported by any other affidavit
> or evidence and under the circumstances of the case there is no
> reasonable possibility that such allegation is true.

*Id.*, 48 Misc.3d 1207(A), at *3 (internal footnote and citations omitted).

Second, the court accepted the People's procedural argument that the entire motion had to

be denied under Section 440.10(2)(c) because Petitioner's ineffective-assistance claim could

have been raised on his direct appeal.  *Id.* at *4.  In this regard, the court noted that, at trial,

Petitioner "testified extensively concerning his mental health history and his emotional state at

the time of the incident."  *Id.* at *3.  The court further noted that Cantor had "argued vigorously,"

in both his opening and closing statements, that Petitioner "was emotionally scarred, mentally

unstable and under the influence of psychiatric medication and alcohol during the incident."

*Id.* at *4.  The court also recounted that Cantor had argued, at the charge conference, for the

reduced charges of second-degree manslaughter and criminally negligent homicide, and that,

when the court had refused to charge either of those crimes, Cantor sought a jury instruction on

EED, making statements that "referr[ed] to his strategy."  *Id.*  Overall, the court found that this

was sufficient to have allowed Petitioner's claim to have been raised on the record.

After making these initial rulings, the court turned to the merits of the Section 440.10 motion and observed that, "[i]n any case, [the] failure to call a particular witness does not necessarily constitute ineffective assistance of counsel," *id*. (citations omitted), and that "it is possible to establish the affirmative defense of [EED] without psychiatric testimony, *id*. (citation omitted). On the motion before it, the court found that Petitioner had not demonstrated either "how an expert's testimony would have been any more successful than the devices counsel did employ," or "the absence of strategic or other legitimate explanations for counsel's actions." *Id*. (citations omitted). In addition, the court found that Petitioner had not shown how he was prejudiced by Cantor's alleged ineffective assistance. *See id*. On this point, the court observed that "a defense of [EED] would not have reduced murder in the second degree to manslaughter in the second degree," given that EED, as the People had argued, was an affirmative defense that could have only reduced second-degree murder to first-degree manslaughter, the crime of which Petitioner was convicted. *Id*.

For all of these reasons, the court denied Petitioner's motion, without a hearing. *See id.*

### c. Petitioner's Application For Leave To Appeal to the Appellate Division

By application dated July 22, 2015, Petitioner sought leave to appeal to the Appellate Division, First Department, from the denial of his Section 440.10 motion, although, in his application, he did not frame his claims in the same way as he had before the trial court. Rather, in his leave application (identifying, for the first time in his papers, a particular psychiatric medication that he had allegedly taken at the time of the crime), he purported to raise the following two questions: (1) whether the trial court should have "granted testimony of an expert witness to determine if the anti-depression medication 'Abilify' mixed together with alcohol cause[d] a reaction"; and (2) whether Cantor, as trial counsel, was ineffective "for not seeking

any evidence of [Petitioner's] record of mental illness."  (Dkt. 10-9, at ECF 1; *see also id.*, at ECF 2 (requesting leave to appeal "for the above mentioned reason(s)").)

On November 2, 2015, the Appellate Division denied leave to appeal, certifying that there was "no question of law or fact presented which ought to be reviewed."  (Dkt. 10-10.)

### 4.   Petitioner's Habeas Petition

Petitioner, proceeding *pro se*, commenced this action by filing an undated Petition that was postmarked February 12, 2016 and received by the Court on February 18, 2016.  (*See generally* Pet.)[6]  In his Petition, Petitioner appears to seek to raise, as grounds for habeas relief, the same claims that he raised in his Section 440.10 motion.  (*See id.* ¶ 12 (referring to Section 440.10 motion).)  In describing his Section 440.10 motion in his Petition, however, Petitioner characterizes the motion somewhat differently than what the underlying motion papers reflect.  As set out above, in the papers he filed in support of his Section 440.10 motion, Petitioner focused, first, on an ineffective-assistance-of-counsel claim that was based on Cantor's alleged failure to secure trial testimony from a medical expert, and then he asserted claims based on Cantor's alleged failure to investigate the effect of Petitioner's combined use of medication and alcohol (including Cantor's failure to obtain Petitioner's medical records).  (*See* Background,

---

[6] Under the so-called "prison mailbox rule," *see Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001), *cert. denied*, 534 U.S. 886, a *pro se* prisoner's habeas petition is deemed "filed" on the date he gives it to prison officials for delivery to the court, *see id.*; *Houston v. Lack,* 487 U.S. 266, 270 (1988).  Where a petitioner does not attest to the date on which he placed his petition in the prison mailing system, courts will look to the date on which the petition is signed to determine the filing date.  *See, e.g.*, *Costilo v. United States*, Nos. 13cv4298 (PGG) (JLC), 98cr0438 (PGG), 2012 WL 9500631, at *1 n.3 (S.D.N.Y. Nov. 12, 2012), *report and recommendation adopted by* 2016 WL 1610609 (Apr. 20, 2013); *Peralta v. Connelly*, No. 06cv5360 (DAB) (MHD), 2008 WL 8050791, at *4 n.6 (S.D.N.Y. Apr. 18, 2008), *report and recommendation adopted by* 2010 WL 3219326 (Aug. 11, 2010).  Here, the Petition is undated and contains no statement as to when Petitioner provided it to prison officials for mailing, and thus this Court will deem it to have been filed on February 12, 2016, the postmark date shown on the envelope in which it was mailed to the Court.

*supra*, at Section B(3)(a).)  Second, Petitioner claimed that his 14th Amendment rights were

violated by having been denied the assistance of a medical expert.  (*See id.*)  In his habeas

Petition, though, Petitioner describes the claims he raised in his Section 440.10 motion as

follows:

> Trial counsel was ineffective for not presenting an intoxication
> charge to the jury due to the fact that [Petitioner] had been taking
> mental health medication (Abilify) together with alcohol.  And that
> no legal expert was called to give the jury facts as to the [e]ffects
> that this mixture would cause.

(Pet. ¶ 11(a)(5).)

Taking as a whole the statements that Petitioner made in his Section 440.10 motion and

the statements in his Petition (characterizing that motion), and liberally construing the Petition,[7]

this Court finds that the Petition may be read to include the following claims:  (1) that, under the

Sixth Amendment, Petitioner's trial counsel, Cantor, was constitutionally ineffective for

(a) failing to investigate the medical effects of mixing psychiatric medication and alcohol, and to

obtain Petitioner's medical records as part of that investigation, (b) failing to take adequate steps

to obtain an expert witness to testify on this issue, and then to present such testimony at trial, and

(c) failing to persuade the trial court to give an intoxication charge to the jury with respect to the

potential effect on Petitioner of the mixing of medication and alcohol; and (2) that Petitioner was

deprived of a fair trial, as guaranteed by the 14th Amendment's Due Process Clause, because he

was not afforded the assistance of a medical expert.

On June 16, 2016, Respondent filed an opposition to the Petition, including a

memorandum of law.  (Resp. Mem.)  In that memorandum, Respondent addressed, as a

---

[7] *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." (internal quotation marks and citations omitted; emphasis in original) (collecting cases)).

preliminary matter, Petitioner's contention that Cantor's representation had been ineffective for "not presenting an intoxication charge." (*Id.*, at 3.) On this point, Respondent noted that Cantor actually *sought* such a charge from the trial court, and had even sought the charge not just with respect to Petitioner's consumption of alcohol, but also with respect to his having mixed alcohol with psychiatric medication. (*Id.*, at 3 n.1 (quoting argument made by Cantor at trial).) Respondent also noted that, on his direct appeal, Petitioner had asserted a claim challenging the trial court's refusal to give an intoxication charge, and that the Appellate Division rejected that claim as without merit, finding the charge would not have been supported by any "reasonable view of the evidence." (*Id.*, at 3 (quoting *Delgado*, 116 A.D.3d at 541-42).) In light of this, Respondent interpreted Petitioner's habeas claims to be based solely on the allegation that Cantor's representation was ineffective, and, further, to be based narrowly on his assertion that Cantor provided ineffective assistance by failing to call an expert witness to testify regarding the effects of Petitioner's having mixed Abilify with alcohol. (*See id*.)

As to that narrow claim, Respondent looked to the trial court's decision on Petitioner's Section 440.10 motion and argued that, in denying this ineffective-assistance claim because it could have been raised on direct appeal, the trial court (which provided the last reasoned decision of the state courts on the issue) rejected the claim on an independent and adequate state-law ground, thereby precluding federal habeas review.[8] (*See id*., at 4-7 (also arguing that Petitioner had shown no basis for overcoming the procedural bar).) Respondent further argued that, in any event, insofar as the trial court rejected Petitioner's ineffective-assistance claim on the merits, that decision was entitled to deference under applicable federal standards. (*See id.*, at 7-11.)

---

[8] Respondent does not address the other state procedural grounds on which the trial court denied Petitioner's ineffective-assistance claim – *i.e.*, Petitioner's stated failure to satisfy the requirements of N.Y. C.P.L. § 440.30(b) and (d).

Petitioner did not file a reply to Respondent's opposition, but rather, by letter dated June 27, 2016, requested that these proceedings be stayed and his Petition held in abeyance, so that he could file a petition in the Appellate Division for a writ of error *coram nobis*.  (Dkt. 13.) Specifically, Petitioner wrote that, in reading Respondent's opposition brief, he had taken note of a footnote in which Respondent had argued that, if Petitioner had wished to assert ineffective assistance of appellate counsel as "cause" for the procedural default of his ineffective-assistance-of-trial-counsel claim, then he should have first exhausted his challenge to his appellate counsel's conduct by raising it in a state *coram nobis* petition.  (*See id*. (citing Resp. Mem., at 6 n.5).)

By Order dated September 12, 2016, this Court denied Petitioner's application for a stay and abeyance, on the grounds that Petitioner had not demonstrated, as required by *Rhines v. Weber*, 544 U.S. 269 (2005), that he had good cause for his failure to exhaust an ineffective-assistance-of-appellate-counsel claim prior to filing his habeas Petition, and, further, that he had not shown that the claim was potentially meritorious.  (Dkt. 14.)

Petitioner did not then proceed to file a reply to Respondent's opposition to his Petition, and none has been received by this Court to date.  (*See generally* Dkt.)

## DISCUSSION

I. **APPLICABLE LEGAL STANDARDS**

A. **Statute of Limitations**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition must be filed within one year of the latest of four dates specified by statute, usually "the date on which the judgment became final by the conclusion of direct review or the expiration of

the time for seeking such review."[9]  28 U.S.C. § 2244(d)(1)(A); *see also Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (holding that judgment becomes "final" for purposes of Section 2244 upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or – if the prisoner elects not to file a petition for certiorari – [the expiration of] the time to seek direct review via certiorari").

The limitations period is tolled during the pendency of any "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2).

## B.   Exhaustion of State Remedies

A federal court generally may not consider a petition for habeas corpus unless the petitioner has first exhausted all state judicial remedies for his federal claims.  28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971) (exhaustion requirement, as now codified in AEDPA, "reflects a policy of federal-state comity"); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) ("[W]hen a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."); *Rhines v. Weber*, 544 U.S. 269, 273-74 (2005) ("the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims" (citation omitted)).

---

[9] The limitations period may alternatively begin to run on the following dates:  (1) where the petitioner was prevented from filing an application by state action, the date on which the impediment is removed; (2) where the right asserted is a newly recognized one made retroactively applicable, the date on which the constitutional right asserted was initially recognized by the Supreme Court; and (3) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(B)-(D).

To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "'opportunity to pass upon and correct' alleged violations of . . . [his] federal rights." *Picard*, 404 U.S. at 275 (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)).  A petitioner may fairly present a federal claim in several ways, including by citing relevant provisions of the federal Constitution in his appellate brief, *see Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001), or by relying on "pertinent federal cases employing constitutional analysis," *Mallet v. Miller,* 432 F. Supp. 2d 366, 374 (S.D.N.Y. 2006) (internal quotation marks and citation omitted) (enumerating the ways a petitioner may fairly present his federal claims in state court).

Aside from setting out the federal nature of his claims, the petitioner must also, for purposes of the exhaustion requirement, present those claims to "the highest court of the pertinent state." *Chebere v. Phillips*, No. 04cv0296 (LAP), 2013 WL 5273796, at *19 (S.D.N.Y. Sept. 18, 2013) (internal quotation marks omitted) (quoting *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994)).  Where a petitioner has been convicted in a New York state court, he may exhaust a federal claim challenging his conviction by presenting the claim on direct appeal to the Appellate Division, and then by seeking leave to appeal to the New York Court of Appeals. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).  Where a claim is not appropriate for direct appeal because it cannot be demonstrated on the basis of the pretrial or trial record, a petitioner may exhaust the claim by raising it to the state trial court in a collateral post-conviction motion, typically in a motion made pursuant to Section 440 of the New York Criminal Procedure Law. *See, e.g.*, *Reyes v. Phillips*, No. 02cv7319 (LBS), 2005 WL 475544, at *4 (S.D.N.Y. Mar. 1, 2005) ("[A] motion under N.Y. Crim. Proc. Law § 440.10 was the appropriate vehicle with which to exhaust [petitioner's] ineffective-assistance-of-counsel claim insofar as it relied upon

evidence outside the record."), and by then seeking leave to appeal to the Appellate Division, *see*

*Ture v. Racette*, No. 9:12-CV-01864 (JKS), 2014 WL 2895439, at *4 (N.D.N.Y. June 26, 2014).

### C.   Procedural Default of Federal Habeas Claims

As a general matter, federal habeas review is not available where a claim has been raised

before the state courts, and the last-reasoned decision of the state courts "rests on a state law

ground that is independent of the federal question and adequate to support the judgment."

*Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see also Ylst v. Nunnemaker*, 501 U.S. 797,

803 (1991).  Such a state-law ground may involve the application of a procedural rule.  *See*

*Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977).  For the state-law ground to be found to have

provided an "independent" basis for the state court's decision, the court's reliance on that ground

"must be clear from the face of the opinion."  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804,

809 (2d Cir. 2000) (internal quotation marks omitted) (quoting *Coleman*, 501 U.S. at 735).  For a

state procedural rule to be deemed an "adequate" basis for the state court's decision, the rule

must be "firmly established and regularly followed" by the state, *see Ford v. Georgia*, 498 U.S.

411, 423-24 (1991) (internal quotation marks and citation omitted), and must not have been

"misapplied in [the petitioner's] case in particular," *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir.

2003) (internal quotation marks and citation omitted).

In order to overcome the procedural bar to federal habeas review, the petitioner must

show both "cause" for the procedural default and "prejudice" resulting therefrom.  *See Coleman*,

501 U.S. at 749-50.  "Cause" is established when "some objective factor external to the defense"

impeded the petitioner's efforts to comply with the state's procedural rule.  *Murray v. Carrier*,

477 U.S. 478, 488 (1986).  More specifically, a petitioner can show "cause" for a procedural

default when (1) "the factual or legal basis for a claim was not reasonably available," (2) "some

interference by state officials made compliance [with the procedural rule] impracticable," or
(3) "the procedural default is the result of ineffective assistance of counsel." *Bossett*, 41 F.3d
at 829 (internal quotation marks and citation omitted).  As for the "prejudice" prong, while the
Supreme Court has not given "precise content" to the term "prejudice," *see Sykes*, 433 U.S.
at 91, it has made clear that a petitioner must show more than "a *possibility* of prejudice;" rather,
the legal errors raised in the petition must have "worked to [the petitioner's] *actual* and
substantial disadvantage," *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in
original).  This is "a significantly higher hurdle than would exist on direct appeal," *id.* at 166, as
the degree of prejudice must be sufficient "to overcome society's justified interests in the finality
of criminal judgments," *id.* at 175.

A defaulted claim may also be reviewed in a federal habeas proceeding where a
"fundamental miscarriage of justice" would result from the court's failure to review the claim;
but, to satisfy this exception to the procedural bar, the petitioner must make a showing of actual
innocence.  *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *see also Dunham v. Travis*, 313 F.3d
724, 730 (2d Cir. 2002).  "Actual innocence" means "factual innocence, not mere legal
insufficiency."  *Dunham*, 313 F.3d at 730 (citation omitted).  To support an allegation of a
fundamental miscarriage of justice, the petitioner must bring forward "new reliable evidence –
whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical
physical evidence – that was not presented at trial."  *Schlup*, 513 U.S. at 324.

### D.    <u>Standard of Review</u>

When this Court reviews a federal constitutional claim that has been adjudicated on the
merits by the state court, the Court must accord substantial deference to the state court's decision
under the standard of review dictated by AEDPA.  *See* 28 U.S.C. § 2254(d); *see also Sellan v.*

*Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means

"a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the

substance of the claim advanced, rather than on a procedural, or other, ground"). The relevant

section of AEDPA provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim – (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established [f]ederal law,
> as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).[10]

Under AEDPA, a state court decision is "contrary to" clearly established federal law

where the state court either applies a rule that "contradicts the governing law" set forth in

Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a

[Supreme Court] decision" and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362,

405-06 (2000). An "unreasonable application" of clearly established federal law occurs when

the state court identifies the correct governing legal principle, but unreasonably applies that

principle to "a set of facts different from those of the case in which the principle was

announced." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The state court's decision, however,

"must have been more than incorrect or erroneous;" rather, "[t]he state court's application must

have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting

*Williams*, 529 U.S. at 409). To be entitled to habeas relief, a petitioner must "show that the state

---

[10] In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).[11]

## II.      THE PETITION SHOULD BE DISMISSED.

### A.      Timeliness of the Petition

As a preliminary matter, this Court notes that there is no issue as to whether Petitioner filed his federal habeas Petition within the one-year statute of limitations provided by AEDPA. On August 12, 2014, the New York Court of Appeals denied Petitioner's request for leave to appeal from the Appellate Division's affirmance of his conviction and sentence, *see generally Delgado*, 23 N.Y.3d 1061, and, for purposes of the AEDPA statute of limitations, his conviction became final 90 days thereafter, *i.e.*, on November 10, 2014, when his time to petition for certiorari expired, *see Williams*, 237 F.3d at 150-51.

The statute of limitations then ran for 60 days, until, on January 9, 2015, Petitioner filed his collateral motion to vacate his conviction, pursuant to N.Y. C.P.L § 440.10.  (Dkt. 10-5, at ECF 17.)  The pendency of the Section 440.10 proceedings operated to toll the statute of limitations for Petitioner's federal habeas claims, through the conclusion of those state proceedings.  *See* 28 U.S.C. § 2244(d)(2); *see also Saunders v. Senkowski*, 587 F.3d 543, 548 (2d Cir. 2009) (noting that a post-conviction motion is generally considered to be "pending," thereby tolling the statute of limitations, "from the time it is first filed until [the time it is] finally disposed of and further appellate review is unavailable under the particular state's procedures."

---

[11]  When, on habeas review, this Court proceeds to consider a substantive claim that has not been decided by the state court on the merits, the Court must consider the claim under a *de novo* standard of review.  *See Carvajal v. Artus*, 633 F.3d 95, 111 n.12 (2d Cir. 2011), *cert. denied*, 565 U.S. 888; *see also Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007).

(quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999) (internal quotation marks omitted)),

*aff'd*, 531 U.S. 4 (2000)).  Thus, in this case, the statute of limitations was tolled until

December 10, 2015, the date of entry of the Appellate Division's order denying Petitioner leave

to appeal from the trial court's denial of his Section 440.10 motion.  (Dkt. 10-10.)  At that point,

Petitioner had another 305 days, or until October 10, 2016, to file his habeas Petition.

As noted above (*see supra*, at n.6), Petitioner's federal habeas Petition should be deemed

to have been filed on February 12, 2016, which was well before the October 10, 2016 expiration

of the limitations period.

### B.     Petitioner's Habeas Claims

As set out above, this Court finds that, if Petitioner's *pro se* habeas Petition is accorded a

generous reading, it should be understood to include both an ineffective-assistance-of-trial-

counsel claim (comprised of several interrelated sub-claims raising different allegations as to the

ways in which counsel was allegedly ineffective) and a due-process claim regarding Petitioner's

alleged deprivation of access to a medical expert.  Under the relevant standards, Petitioner cannot

prevail on either of these claims.

### 1.     Ineffective Assistance of Trial Counsel

#### a.     Petitioner Has Only Partially Exhausted
#### His Ineffective-Assistance-of-Counsel Claim.

In his Section 440.10 motion, Petitioner claimed that his trial counsel, Cantor, was

ineffective for a number of reasons, including that Cantor had failed:  to investigate the medical

effects of mixing psychiatric medication and alcohol; to obtain Petitioner's medical records; to

seek or obtain a medical expert; to present testimony from an expert; and, arguably, to secure an

intoxication charge.  (Dkt. 10-5.)  In his application for leave to appeal to the Appellate Division,

though, the only ineffective-assistance claim that Petitioner articulated was Cantor's alleged

failure to obtain Petitioner's mental-health records.  (*See generally* Dkt. 10-9.)  Thus, Petitioner

seems to have abandoned most of the sub-claims that he now seeks to raise under his general

claim of "ineffective assistance," such that these sub-claims may not be considered fully

exhausted for purposes of habeas review.  *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).

      To the extent Petitioner's sub-claims are not exhausted, they are deemed exhausted and

procedurally barred, as Petitioner cannot, now, redraft his letter to the Appellate Division seeking

leave to appeal.  *See Parrish v. Lee*, No. 10cv8708 (KMK), 2015 WL 7302762, at *9-10, 16

(S.D.N.Y. Nov. 18, 2015); *Cumberland v. Graham*, No. 08cv4389 (LAP) (DF), 2014 WL

2465122, at *13 (S.D.N.Y. May 23, 2014).

      **b.**    **The Claim Is, in Any Event, Procedurally Barred
In its Entirety, as It Was Decided by the Trial Court
on an Independent and Adequate State-Law Ground.**

      Putting aside the issue of exhaustion, Respondent argues that the ineffective-assistance

claim that Petitioner raised to the trial court on his Section 440.10 motion is procedurally barred,

as that claim was denied in its entirety by the court on an independent and adequate state-law

ground – specifically, on the basis of N.Y. C.P.L. § 440.10(2)(c).  (Dkt. 11, at ECF 4-7.)

      As an initial matter, it is worth noting that the trial court, in its Section 440.10 decision,

articulated that its first ground for denial of the motion was that Petitioner's submission was

improperly supported, as required under Sections 440.30(4)(b) and (d) of the New York Criminal

Procedure Law.  *See People v. Delgado*, 48 Misc.3d 1207(A), at *3.  As set out below, this Court

does not find that the trial court's denial of the motion pursuant to N.Y. C.P.L. §§ 440.30(4)(b)

and (d) should serve as a procedural bar to habeas review.  Nonetheless, this Court agrees with

Respondent that the trial court's alternative denial of the motion under N.Y. C.P.L.

§ 440.10(2)(c) does procedurally bar Petitioner's ineffective-assistance claim from this Court's review of the claim.[12]

### i.      N.Y. C.P.L. §§ 440.30(4)(b) and (d)

In denying Petitioner's Section 440.10 motion, the trial court initially invoked Sections 440.30(4)(b) and (d) of the New York Criminal Procedure Law, which provide that the state court may deny a motion to vacate without a hearing if the court, "[u]on considering the merits of the motion," determines that the facts upon which the motion is based are unsupported by sworn allegations, N.Y. C.P.L. § 440.30(4)(b), or if a factual allegation essential to the motion is contradicted by the record or made solely by the movant, and there "is no reasonable possibility that such allegation is true," N.Y. C.P.L. § 440.30(4)(d).

District courts in this Circuit are split on the question of whether a state court's denial of a motion pursuant to Section 440.30(4)(b) and (d) procedurally bars a habeas court from reaching the merits of the dismissed claim. *See Douglas v. Hollins*, No. 00cv7928 (MBM), 2004 WL 187130, at *3 (S.D.N.Y. Jan. 29, 2004) (collecting cases). The courts that have found that dismissal under Section 440.30(4) results in a procedural bar have simply reasoned that, because state law requires a movant to support any Section 440.10 motion with sworn statements, the denial of such a motion based on the movant's failure to do so constitutes judicial reliance on an adequate and independent state procedural rule. *See, e.g., Williams v. McGinnis*, No. 04-CV-1005 (NGG), 2006 WL 1317041, at *10 (E.D.N.Y. May 15, 2006) (finding that claim was procedurally barred because petitioner's Section 440.10 motion did not satisfy the "bare

---

[12]  The fact that the trial court went on analyze the merits of Petitioner's ineffective-assistance claim as an alternative grounds to deny the Section 440.10 motion does not alter this Court's conclusion that the claim is procedurally barred from federal habeas review. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (noting that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding") (emphasis in original).

minimum procedural requirement" of Section 440.30(4)(b)); *Shaw v. Artuz*, No. 99cv9754, 2001 WL 1301735, at *4 (S.D.N.Y. Oct. 19, 2001) ("Shaw has also defaulted this claim because he failed to comply with [Section] 440.30(4)(b), which requires appellants to support their allegations with sworn statements.").

By contrast, those courts that have found the opposite have determined that, because "[S]ection 440.30(4) applies, by its own terms, only when a trial court denies a motion to vacate '[u]pon considering the merits,' . . . a denial based on [S]ection 440.30(4) is a decision on the merits, and cannot be a procedural bar to a federal habeas claim." *Williams v. Duncan*, No. 9:03-CV-568 (LEK/RFT), 2007 WL 2177075, at *14 (N.D.N.Y. July 27, 2007); *see Coello v. Bell*, No. 18cv4485 (VSB) (JLC), 2019 WL 2092596, at *12 (S.D.N.Y. May 14, 2019), *report and recommendation adopted*, 2020 WL 2792986 (S.D.N.Y. May 28, 2020); *Lopez v. Ercole*, No. 09cv1398 (PAC) (AJP), 2010 WL 1628994, at *19 (S.D.N.Y. Apr. 21, 2010) (citing cases on either side of the split, and concluding that denial pursuant to Section 440.30(4)(d) is merits-based), *report and recommendation adopted*, 2014 WL 285079 (Jan. 27, 2014), *aff'd*, 588 F. App'x 39 (2d Cir. 2014); *Washington v. Cuomo*, No. 06-CV-6477 (CBA), 2009 WL 3379076, at *4 (E.D.N.Y. Oct. 19, 2009) (noting split but finding that "better reasoned authority" has concluded that § 440.30(4)(d) does not act as a procedural bar to habeas review).

Although the Second Circuit has not directly addressed this conflict, it has determined, in a summary order, that a dismissal under a different provision of the same subsection constitutes a merits-based adjudication. Specifically, in *Garcia v. Portuondo*, the Second Circuit found that, "based upon the plain language of the statute," a decision based on Section 440.30(4)(c), which permits a state trial court to dismiss a Section 440.10 motion without a hearing if "[a]n allegation of fact essential to support the motion is conclusively refuted by unquestionable documentary

proof," N.Y. C.P.L. § 440.30(4)(c), is a decision on the merits. *Garcia*, 104 F. App'x 776, 779

(2d Cir. 2004) (summary order).  In so holding, the Second Circuit stated:

> Even aside from the fact that the provision opens with an explicit
> reference to 'considering the merits of the motion,' subsection (c)
> implicitly requires a balancing of the evidence presented by the
> parties by, first, calling for an identification by the court of those
> facts that are 'essential to support the motion' and, then, requiring
> the court to evaluate whether those facts are 'conclusively refuted'
> by the documentary evidence.

*Id.*

As the Second Circuit's analysis of this provision is equally applicable to

Sections 440.30(4)(b) and (d), which open with the same reference to the merits of the motion,

this Court finds that a denial under those provisions constitutes a decision "on the merits," for

purposes of habeas review.  *See Bethea v. Walsh*, No. 09-CV-5037 (NGG), 2016 WL 258639, at

*13 (E.D.N.Y. Jan. 19, 2016) (noting that, "[a]fter *Garcia*, a number of district courts within the

Second Circuit have applied a similar analysis" to claims denied under other subsections of

Section 440.30(4)); *see also Lopez v. Ercole*, 588 F. App'x 39, 40 (2d Cir. 2014) (summary

order) (noting, in *dicta*, that the court's view that the petitioner's claim, which was denied under

§ 440.30(4)(d), "ha[d] been adjudicated on the merits by the state court").

Thus, this Court concludes that the trial court's denial of Petitioner's Section 440.10

motion pursuant to N.Y. C.P.L. §§ 440.30(4)(b) and (d) does not procedurally bar this Court

from reaching the merits of Petitioner's ineffective-assistance-of-counsel claim.

### ii. <u>N.Y. C.P.L. § 440.10(2)(c)</u>

The trial court, however, also expressly adopted the People's contention that Petitioner's

ineffective-assistance claim (and any sub-claims) could have been raised on direct appeal

because the record contained both testimony by Petitioner regarding his mental state and

statements by Cantor referring to his strategy, and that denial of this claim was therefore required under N.Y. C.P.L. § 440.10(2)(c).  *Delgado*, 48 Misc.3d 1207(A), at *4.  This alternative holding serves as an independent and adequate state-law ground for the decision that procedurally bars this Court from reviewing the merits of Petitioner's ineffective-assistance-of-counsel claim.

First, it is "clear from the face" of the trial court's decision that the court rejected Petitioner's ineffective-assistance claim on the state-law procedural ground that Petitioner failed to raise that claim on direct appeal, although there had been "sufficient facts [that] appear[ed] on the record of the proceedings."  *Id.*, at *2 (quoting N.Y. C.P.L. § 440.10(2)(c)).  This Court thus finds that this state-law ground was "independent" of any federal basis for resolving the claim. *See Fama*, 235 F.3d at 809.

Second, by its terms, the procedural rule on which the trial court relied states that a trial court "must deny a motion to vacate a judgment" when, "although sufficient facts appear on the record of the proceedings," the movant has unjustifiably failed to raise his claim on direct appeal. N.Y. C.P.L. § 440.10(2)(c).  This mandatory rule has been found to be "firmly established" and "regularly followed" by the state courts, *see Black v. Griffin,* No. 15cv8112 (ALC), 2019 WL 2551685, at *23-24 (S.D.N.Y. Jan. 14, 2019), *report and recommendation adopted*, No. 15cv8112 (ALC), 2019 WL 2548132 (S.D.N.Y. June 20, 2019); s*ee also, e.g.*, *Acevedo v. Lempke*, No. 10cv5285 (PAE) (HBP), 2012 WL 360276, at *12 (S.D.N.Y. Feb. 3, 2012), and there is also no indication here that the trial court misapplied the rule in this instance, *see Cotto*, 331 F.3d at 240.  Specifically, the record reflects that the ineffective-assistance claims that Petitioner raised in his Section 440.10 motion were all based on references to the trial record, such that those same claims could have been advanced on Petitioner's direct appeal, but were not.  (*See generally* Dkt. 10-1.)  Accordingly, the trial court's reliance on Section 440.10(2)(c) as

a basis for its decision was not only "independent," but was also "adequate" to support the

court's determination, barring federal habeas review.  *See Black,* 2019 WL 2551685, at *23-24.

c.      **Petitioner Cannot Overcome the Procedural Bar to**
                    **This Court's Review of His Ineffective-Assistance Claim.**

As set out above, not only are portions of Petitioner's ineffective-assistance-of-counsel

claim procedurally barred as a result of his failure to exhaust those portions of the claim, but his

ineffective-assistance claim is barred from habeas review in its entirety because the trial court

wholly rejected the claim on the independent and adequate state-law ground that he had failed to

raise the claim on his direct appeal.  Accordingly, Petitioner now has the burden of

demonstrating that he can overcome the procedural bar, by showing both "cause" for the

procedural default and "prejudice" resulting therefrom, *see Coleman*, 501 U.S. at 749; *Gray*, 518

U.S. at 162, or that this Court's failure to review the claim would result in a "fundamental

miscarriage of justice," *Schlup*, 513 U.S. at 326-27.  Petitioner has shown neither.

First, Petitioner has not even suggested, much less established, that he had "cause" for

failing to raise, on direct appeal, his claims relating to Cantor's alleged ineffective assistance.

Petitioner also cannot show the requisite "prejudice," as, for the reasons discussed further below,

there is no merit to his contention that his federal constitutional rights were violated by any

deficiency in Cantor's representation.  *See Stanley v. Smith*, No. 12cv6362 (AT) (SN), 2014 WL

5039444, at *16 (S.D.N.Y. Sept. 26, 2014) ("[I]f the underlying claim could not prevail, denying

an opportunity to raise that claim is not fundamentally unfair."); *Grullon v. United States*,

No. 04cv7144 (SAS), 2006 WL 559668, at *7 (S.D.N.Y. Mar. 8, 2006) ("[Petitioner] has not

shown any prejudice because he has failed to demonstrate that his [claim] would succeed on the

merits.").  Second, Petitioner has not shown that this Court's failure to review his defaulted claim

34

would result in a fundamental miscarriage of justice, as he has not presented any new and reliable evidence that could demonstrate his actual innocence.  *See Schlup*, 513 U.S. at 324.

For these reasons, I recommend that the Court deny Petitioner's ineffective-assistance-of-counsel claim, in its entirety, as procedurally barred.

### d.      The Ineffective-Assistance Claim Is Also Without Merit.

Even if Petitioner could overcome the procedural bar, Petitioner could not prevail on the merits of his ineffective-assistance-of-counsel claim.  As set out above, after denying this claim on procedural grounds, the trial court went on to consider its merits and rejected the claim on substantive grounds as well.  (*See* Background, *supra,* at Section B(3)(b); *see also Delgado*, 48 Misc.3d 1207(A), at *4.)  The trial court's decision on the merits, if considered here, would have to be reviewed under the deferential standard of review set out in AEDPA, and, based on the evidence of record, Petitioner would not be able to meet that standard.

For AEDPA purposes, the "clearly established federal law" regarding a defendant's constitutional right to the effective assistance of counsel is outlined in *Strickland v. Washington*, 466 U.S. 668 (1984); *see Richter*, 562 U.S. at 101 (for ineffective-assistance claim, habeas petitioner must establish that *Strickland* was applied unreasonably by state courts).  Accordingly, to prevail on an ineffective-assistance claim, a habeas petitioner must show, as required by *Strickland*, that:  (1) his counsel's performance "fell below an objective standard of reasonableness," and (2) he suffered prejudice as a result.  *Strickland*, 466 U.S. at 688, 694.

As to the first prong of this test, there is a strong presumption that counsel's conduct fell within the range of reasonably professional assistance.  *See id*. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance.").  With regard to prejudice, the petitioner must demonstrate "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different."  *Id*. at 694; *see also Richter*, 562 U.S. at 111-12 (holding that, to satisfy this

second prong, "[t]he likelihood of a different result must be substantial, not just conceivable").

A court may reject an ineffective-assistance claim for failure to satisfy either prong of the

*Strickland* standard, without reaching the other.  *See Strickland*, 466 U.S. at 697 ("If it is easier

to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed."); *Parker v. Ercole*, 666 F.3d 830, 834

(2d Cir. 2012) (rejecting ineffective-assistance claim based on petitioner's failure to satisfy one

of *Strickland*'s two prongs).

       In light of the deference that must be accorded under *Strickland* and separately under

AEDPA, this Court's review of an ineffective-assistance claim that has been decided on the

merits by a state court is "doubly deferential."  *Woods v. Etherton,* 136 S. Ct. 1149, 1151 (2016)

(citing *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).  In other words, under AEDPA, a

petitioner "must do more than show that he would have satisfied *Strickland*'s test if his

[ineffective-assistance] claim were being analyzed in the first instance, because under

§ 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent

judgment, the state-court decision applied *Strickland* incorrectly."  *Bell v. Cone*, 535 U.S. 685,

698-99 (2002).  "Rather, [the petitioner] must show that the [state court] applied *Strickland* to the

facts of his case in an objectively unreasonable manner."  *Id*. at 699.  "[T]he question is not

whether counsel's actions were reasonable.  The question is whether there is any reasonable

argument that counsel satisfied *Strickland*'s deferential standard."  *Richter*, 562 U.S. at 105.  The

application of the AEDPA standard of review, coupled with the strong presumption that counsel

"rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment" typically affords "both the state court and the defense attorney the benefit of the doubt."  *Etherton*, 136 S. Ct. at 1151 (citations omitted).

Here, Petitioner has failed to demonstrate that the trial court unreasonably applied *Strickland*.

### i. Petitioner Has Not Shown That His Trial Counsel's Performance Was Deficient.

The first prong of the *Strickland* test requires a showing that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 687-88.  In this case, Petitioner argues that, under the Sixth Amendment, his trial counsel, Cantor, was constitutionally ineffective for allegedly (a) failing to investigate the medical effects of mixing psychiatric medication and alcohol, and to obtain Petitioner's medical records as part of that investigation; (b) failing to take adequate steps to obtain an expert witness to testify on this issue, and then to present such testimony; and (c) failing to persuade the trial court to give an intoxication charge to the jury with respect to the potential effect on Petitioner of the mixing of medication and alcohol.  (*See* Pet., at ECF 2-3; Dkt. 10-5, at ECF 8-10.)  As discussed below, for each of these allegations, Petitioner has not made the showing necessary to demonstrate that Cantor's performance was deficient, within the framework of *Strickland*.

### A. Counsel's Alleged Failure to Investigate

In his affidavit to the trial court in support of the Section 440.10 motion, Petitioner argued that Cantor failed to "investigate" that Petitioner had used both psychiatric medications and alcohol "before and during the commission of the crime[s] ch[a]rged."  (Dkt. 10-5, at ECF 5

(alteration in original)), and had also failed to "obtain medical records regarding the fact that [Petitioner] was indeed prescribed mental medications" (*id.*, at 9).

To provide effective assistance, an attorney "has a duty to make reasonable investigations." *Strickland*, 466 U.S. at 691. An attorney, however, "need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Richter*, 562 U.S. at 108 (citing *Strickland*, 466 U.S. at 691). Moreover, the Supreme Court has instructed that, in preparing for trial, defense counsel is "entitled to formulate a strategy that [is] reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Id.* at 107.

Here, in its Section 440.10 decision, the trial court noted that Cantor had "vigorously argued" that Petitioner was "emotionally scarred, mentally unstable and *under the influence of psychiatric medication and alcohol during the incident*." *Delgado*, 48 Misc.3d 1207(A), at *4 (emphasis added). Indeed, the state court record is replete with Cantor's strategic references not only to Plaintiff's consumption of alcohol on the night in question, but also to his use of psychiatric medications, thus indicating that, prior to trial, Cantor had inquired into and obtained information regarding Petitioner's mental health and his use of medication. (*See* Trial Tr. (Dkt. 17), at 1640-41, 1649-50.) In fact, the trial transcript reveals that Cantor elicited from both Petitioner and his former girlfriend that Petitioner had not only consumed at least six cups of hard liquor and multiple beers (*id.*; *see also id*. (Dkt. 16), at 1388), but that he had been diagnosed with both depression and with "being bipolar" (*id.* (Dkt. 17), at 1637; *see also id.*, at 1644), and had taken medication for both on the night of the party (*id.*, at 1640-41; *see also id.* (Dkt. 16) at 1387). On this record, Petitioner has not shown that it fell below prevailing professional norms for Cantor not to have taken the additional step of seeking to obtain the

medical records that may (or may not) have confirmed Petitioner's diagnoses and medication regimen.

Given the "heavy measure of deference to counsel's judgments" afforded by *Strickland*, 466 U.S. at 691, Cantor's decision not to obtain or utilize Petitioner's medical records could have been strategic, and, in the circumstances presented, the trial court's rejection of Petitioner's claim that Cantor failed to conduct an adequate investigation cannot be found to have been either contrary to, or an unreasonable application of, *Strickland*.  *See* 28 U.S.C. § 2254(d)(1).

### B.   Counsel's Alleged Failure to Obtain an Expert and Introduce Expert Testimony

Next, Petitioner essentially alleges that Cantor had no strategic basis for failing to consult with a medical expert or to call such an expert to testify at trial.  (*See generally* Pet., at ECF 3.) More specifically, in his affidavit in support of his Section 440.10 motion, Petitioner contended that, had an expert witness testified at trial, that expert would have helped to ensure the "jury hear[d] the complete facts of the matter," so that the People "could not ha[ve] taken advantage of [Petitioner] when he took the stand to testify as to those facts."  (Dkt. 10-5, at ECF 8-9.)  In other words, Petitioner appears to suggest that an expert would have provided needed clarification as to the effects of his prescribed medications, specifically Abilify and Depakote.  As to this assertion, the trial court concluded that, although Cantor did not call an expert to testify, Petitioner had not shown that this deprived him of effective assistance of counsel because he "ha[d] not demonstrated how an expert's testimony would have been any more successful than the devices [Cantor] did employ," Petitioner "ha[d] not demonstrated the absence of strategic or other legitimate explanations for [Cantor's] actions," and it [was] possible to establish the affirmative defense of [EED] without psychiatric testimony."  *Delgado*, 48 Misc.3d 1207(A), at *4.

As a general matter, the choice "whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987).  While "[c]riminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence, . . . [rare] are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Richter*, 562 U.S. at 106 (citing *Strickland*, 466 U.S. at 689).  Thus, the decision "whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (citing *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997)).  Moreover, claims that counsel was ineffective for failing to call certain witnesses are disfavored on habeas review because "allegations of what a witness would have testified [to] are largely speculative." *Speringo v. McLaughlin*, 202 F. Supp. 2d 178, 192 (S.D.N.Y. 2002).

In this case, Petitioner has set forth no specific, non-speculative allegations that would have supported the need for an expert, such as alleging (with the support of competent evidence) that his prescribed medications had the medically recognized side-effect, alone or when mixed with alcohol, of interfering with the formulation of intent.  Further, any such allegation would be undercut by the evidence in the record, given that – as the Appellate Division noted in its decision on Petitioner's direct appeal – he admitted, both in his statement to the police and in his trial testimony, "that he acquired a knife in preparation for possible confrontation with [Sosa]," *Delgado*, 116 A.D.3d at 541, thereby demonstrating that Petitioner's "behavior was entirely purposeful," *id.*

40

The fact that, before trial, Petitioner had already admitted that he had deliberately armed himself in preparation for a possible confrontation could well have led Cantor to conclude, as a matter of trial strategy, that a medical expert's testimony would have limited value.  Certainly, Cantor could have reasonably believed that questioning Petitioner about his psychiatric condition, and questioning both Petitioner and other witnesses about Petitioner's consumption of alcohol and use of medication on the night of the party, would be as effective as introducing expert testimony.  Cantor may also have chosen not to call an expert witness so as to avoid giving the prosecution the opportunity to cross-examine the expert, *see Richter*, 562 U.S. at 111 (noting that, "[i]n many instances cross-examination will be sufficient to expose defects in an expert's presentation"), or to avoid opening the door to a rebuttal expert.

The record also reveals that Cantor conducted a skillful direct examination of Petitioner, during which he elicited testimony that Petitioner had a history of hospitalizations and was taking more than one psychiatric medication, which he had combined with alcohol at the time of the party.  (Trial Tr. (Dkt. 17), at 1630, 1632-33, 1638, 1644.)  In his arguments to the jury, Cantor similarly drew specific attention to Petitioner's mental health status, ultimately securing an acquittal on the top count charged against him for murder in the second degree.  On this record, Petitioner's assertion – that an expert would have somehow made sure that the People did not "take[] advantage of [him] when he took the stand to testify as to the effects of his medications" (Dkt. 10-5, at ECF 8-9) – is speculative and does not warrant a finding that Cantor's decision not to call an expert fell below an objective standard of reasonableness.

Overall, this Court cannot find that the trial court erred in concluding that Cantor's performance was not rendered constitutionally deficient by his alleged failure to secure the testimony of a medical expert.  Certainly, the trial court's determination on this point cannot be

considered an "unreasonable" application of *Strickland*, and thus the determination is entitled to deference under AEDPA.  *See* 28 U.S.C. § 2254(d)(1).

### C.  Counsel's Alleged Failure To Pursue an Intoxication Charge

Finally, Petitioner appears to argue that Cantor's representation was inadequate because Cantor failed to persuade the trial court that it should give the jury an intoxication charge with respect to the potential effect on Petitioner of the mixing of medication and alcohol.  (Pet., at ECF 3.)  The trial court appears to have implicitly rejected this argument when it denied Petitioner's ineffective-assistance claim on the merits.  *See Delgado*, 48 Misc.3d at *3-4.

As set out above, not only did Cantor seek an intoxication charge from the trial court during the charge conference, but Cantor specifically sought an intoxication charge that incorporated a reference to "psychotropic medicine" because, according to Cantor, such "medicine combined with an abundance of alcohol [was] a jury question to determine what effect that had upon [Petitioner's] *mens rea*."  (Trial Tr. (Dkt. 17), at 1814.)  The fact that the trial court, in exercising its discretion, declined to accept Cantor's argument does not serve as a basis for this Court to find that Cantor's representation of Petitioner was constitutionally insufficient. As the transcript of the trial proceedings reflects, indisputably, that Cantor actually requested – and argued for – the intoxication charge that Petitioner now asserts was necessary, the trial court's rejection of this portion of Petitioner's ineffective-assistance claim cannot be found to have been either contrary to, or an unreasonable application of, *Strickland*.  *See* 28 U.S.C. § 2254(d)(1).

In sum, with respect to each of his allegations of ineffective assistance, Petitioner has not made the showing necessary to satisfy the first prong of *Strickland* – that Cantor's performance fell below an objective standard of reasonableness, "as measured under prevailing professional

norms," *Strickland*, 466 U.S. at 688, and he therefore cannot demonstrate that any aspect of his ineffective-assistance-of-counsel claim has merit.

### ii.    Petitioner Has Also Not Demonstrated Prejudice.

Petitioner's ineffective-assistance claim also fails for the separate reason that he has not shown that Cantor's alleged errors, even if they could be found to have rendered his performance deficient, likely had an adverse effect on the outcome of the trial, as required by the second prong of the *Strickland* test.  *Strickland,* 466 U.S. at 694.

When asserting that an alleged failure by counsel caused the requisite prejudice, a petitioner cannot rely on vague or speculative allegations.  *Carter v. McKoy*, No. 09cv1030 NRB, 2010 WL 3290989, at *7 (S.D.N.Y. Aug. 9, 2010) ("[v]ague and conclusory allegations are not sufficient to demonstrate either that counsel was ineffective or that the petitioner suffered actual prejudice"); *see Kemp v. New York*, No. 07cv6996 (RMB) (HBP), 2009 WL 306258, at *14 (S.D.N.Y. Feb. 9, 2009).  In other words, "some objective evidence other than [the petitioner's] assertions [is required] to establish prejudice."  *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

Additionally, when a claim of ineffective assistance is based on a failure to call a certain witness, such as an expert, the petitioner must do more than show that the witness would have given testimony that may have assisted his case; he must demonstrate that the witness would have given testimony that actually would have tended to exonerate him.  *United States v. Vargas*, 920 F.2d 167, 170 (2d Cir. 1990) (affirming dismissal of ineffective-assistance claim where "the proffered testimony of the other suggested defense witnesses relate[d] only to collateral matters"); *Erbo v. United States*, No. 08cv2881 HB, 2009 WL 2460998, at *4 (S.D.N.Y.

43

Aug. 12, 2009) (dismissing ineffective-assistance claim where petitioner "d[id] not identify any specific testimony . . . that would have exonerated him").

As is evident from the trial transcript, Petitioner's principal defenses at trial were that, based on his mental health diagnoses and emotional state at the time of the party, he did not possess the requisite intent to be convicted of murder in the second degree and/or manslaughter in the first degree, and that he was also justified in defending himself against Sosa.  (Trial Tr. (Dkt. 16), at 687-89; *see id.* (Dkt. 17), at 1055, 1625-26, 1806-08, 1824.)  The Petition fails to show a reasonable probability that Cantor's calling an expert to testify or introducing medical records into evidence would have resulted in the jury's complete adoption of either of those defenses.  Specifically, Petitioner has not pointed to any proffered testimony by an expert or any portion of his medical records (which have not been placed before the Court) that would directly refute his own post-arrest statement and testimony that he took a knife from Margie's kitchen in preparation for a possible confrontation with Sosa, or the testimony of eye-witnesses that Petitioner then proceeded to stab Sosa without Sosa's having first taken actions that placed Petitioner in physical danger.  (*See* Trial Tr. (Dkt. 16), at 882, 1006; *see id.* (Dkt. 17), 1472-73.)

In short, even if, as Petitioner argues, the inclusion of expert testimony or the admission of medical records would have bolstered his argument that his combined consumption of alcohol and medication at or before the time of the party affected his mental status, he has not shown a substantial likelihood that, with the benefit of such evidence, the jury would have concluded that he lacked the requisite mental intent to be convicted of manslaughter in the first degree.  On a final related point, Petitioner has not shown that, with the addition of medical evidence, he would have prevailed on the affirmative defense of EED.  Indeed, as to this point, the trial court rightly noted that the EED defense would only have been available to Petitioner to reduce a charge of

intentional murder in the second degree *to manslaughter in the first degree* – the very crime of which he was convicted.  *Delgado*, 48 Misc.3d 1207(A), at *4.  Petitioner has thus failed to show a reasonable probability that the introduction of expert testimony or medical records would have altered the outcome of the trial.

In conclusion, Petitioner faces a "high bar" in his claim for federal habeas relief based on Cantor's allegedly defective performance.  *United States v. Martinez*, 953 F. Supp. 2d 514, 518 (S.D.N.Y. 2013).  Petitioner's allegations regarding Cantor's performance at trial fail to meet that bar and fall short of "undermin[ing] confidence in the outcome of the trial."  *Barnes v. United States*, No. 04cr0186 (LAP), 2015 WL 5854030, at *10 (S.D.N.Y. Aug. 31, 2015) (citation omitted).  As he has not shown, under *Strickland*, that Cantor's performance was objectively unreasonable, and also has not shown that Cantor's alleged failures likely affected the outcome of the trial, Petitioner necessarily has not shown that the trial court's decision, rejecting his ineffective-assistance claim, was "contrary to" or an "unreasonable application of" the two-prong *Strickland* test.  28 U.S.C. § 2244(d)(2).  I therefore recommend that Petitioner's ineffective-assistance-of-counsel claim be denied in its entirety, as procedurally barred (for the reasons stated above) and, in any event, without merit.

### 2.     Claimed Due Process Violation, For Denial of Access to a Medical Expert

As the second stated claim in the habeas Petition, Petitioner argues that he was deprived of a fair trial, as guaranteed by the 14th Amendment's Due Process Clause, because he was not afforded the assistance of a medical expert.  (Pet., at ECF 3.)  As articulated in his affidavit in support of the Section 440.10 motion, Petitioner suggests the trial court should have "provide[d] funds for an expert witness in the field of medicine."  (Dkt. 10-5, at ECF 8.)

As an initial matter, this Court finds that this claim is exhausted, as Petitioner raised it in his Section 440.10 motion and also in his letter seeking leave to appeal to the Appellate Division. (*See id.*; *see also* Dkt. 10-9.)  Although a question arises as to whether the trial court addressed this claim, as its denial of the Section 440.10 motion focused on Petitioner's ineffective-assistance claim, it appears that the trial court's reasoning can be read to incorporate a rejection of this claim as well.  *See Delgado*, 48 Misc.3d 1207(A), at *3-4.  In any event, even if this Court were to review Petitioner's due process claim *de novo*, the claim would be subject to dismissal for lack of merit.

In a criminal trial, "[d]ue process guarantees that a criminal defendant will be treated with 'that fundamental fairness essential to the very concept of justice.  In order to declare a denial of it [the court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.'"  *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (quoting *Lisenba v. People of State of California*, 314 U.S. 219, 236 (1941)).

As discussed above (*see* Discussion, *supra*, at Section B(1)(d)(i)(B)), Petitioner has not demonstrated that a medical expert would have provided beneficial testimony, much less that the absence of such testimony was so significant that it deprived him of a fair trial.  *See, e.g.*, *Riley v. Noeth*, No. 9:15-CV-01340 (JKS), 2018 WL 1033289, at *4 (N.D.N.Y. Feb. 22, 2018) (rejecting petitioner's contention that he was "deprived of a fair trial" by the omission of a medical expert's testimony), *aff'd*, 802 F. App'x 7 (2d Cir. 2020).  The record reflects that, through Petitioner's own testimony and the other testimony elicited by his counsel, the jury was made aware of Petitioner's history of mental illness, his combined use of psychiatric medication and alcohol on the night of the incident, and his claimed mental-health status and emotional state at that time.

On this record, and in light of the substantial inculpatory evidence that was also introduced at trial – including the testimony of eye-witnesses and Petitioner's own admissions – Petitioner has failed to demonstrate that the absence of expert testimony "fatally infected the trial," so as to be violative of due process.  *Lisenba*, 314 U.S. at 236.

Accordingly, I recommend that Petitioner's due process claim be denied as without merit.

## **CONCLUSION**

For all of the foregoing reasons, I respectfully recommend that Petitioner's Petition for a Writ of Habeas Corpus be dismissed in its entirety.  Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A) because Petitioner has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Edgardo Ramos, United States Courthouse, 40 Centre Street, Room 410, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Ramos.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  (*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Hermann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 98, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd*., 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-238 (2d Cir. 1983).)

If Petitioner does not have access to cases cited herein that are reported only on Westlaw, he may request copies from Respondent's counsel.  *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the pro se litigant with copies of [cases and other authorities that are unpublished or reported exclusively on computerized databases that are] cited in a decision of the Court and were not previously cited by any party").

The Clerk of Court is directed to mail a copy of this Report and Recommendation to Petitioner, at both of the two addresses provided below.

Dated:  New York, New York
       June 15, 2020

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Mr. David Delgado
12A3683
Green Hazen Correctional Facility
P.O. Box 4000
Stormville, NY 12582-4000

Mr. David Delgado
12A3683
Eastern NY Correctional Facility
P.O. Box 338
Napanoch, NY 12458-0338

Respondent's counsel (via ECF)